## GEORGE BULL, Appellee,

*vs.*

## ALEXANDER BELL, Appellant, impleaded with others.

APPEAL IN EQUITY FROM THE RACINE CIRCUIT COURT.

It is a familiar rule in chancery practice, that a defendant may demur, or answer to one part of the bill, and plead to other parts of the bill, and *vice versa;* and when a party does so, the demurrer must first be heard and determined before proceeding to a final hearing upon the merits.

When a defendant in equity, in his answer, raises objections to the frame of the bill, and the sufficiency of the allegations therein contained, and claims the same benefit therefrom as though he had demurred, he cannot demand a decision upon such objections so raised in the answer before the final hearing, as he could have done had he formally demurred to the parts of the bill which he deems insufficient.

An objection at the hearing, for want of a particular party, may be obviated by the complainant's waiving the relief he is entitled to against such party, provided the rights of others are not prejudiced thereby.

It is no defence to a bill for specific performance, that the defendant can only partially perform, provided the complainant, having fully performed on his part, is willing to accept such partial performance in satisfaction of the contract.

When the intention of the parties can be clearly ascertained from the language of the contract, it will be enforced, though inartificially expressed.

Conveyances made and taken to evade the specific performance of a contract for the sale of real estate, will be set aside as fraudulent and void.

THIS was a bill for specific performance, to which Alexander Bell, Lemuel B. Miller, Seth S. Norris, and Nancy Norris, his wife, were made parties. The bill set forth an agreement between Seth H. Norris, and Nancy, his wife, of the first part, Daniel Slauson of the second part, and George Bull of the other (third) part, made the 9th day of May, 1853, by which the parties of the first and second part agreed to sell and convey by good and sufficient deed, all of certain premises, particularly described therein, subject to a lease to John Horton, said lease to be assigned by said deed to Bull, and subject also to a mortgage to the state for school and university lands, to be paid by Bull, and upon the following conditions, to wit: "The said Bull is to pay the said Slauson or his executors, administrators or assigns,

the sum of one thousand dollars in two equal annual payments, with interest annually, at twelve per cent., from the date thereof, with the privilege of paying up the whole sum with interest, at any time previous to the said two years, and the said party to deed the said premises as soon as the same can be procured; and when the same are procured, then' the said Bull is to execute notes and mortgages for the purchase money as aforesaid, and the said Bull is to have immediate possession of premises as aforesaid." The contract is signed and sealed by the several parties therein named, on the part of Norris and wife, by M. B. Butterfield, their attorney, and by Slauson and Bull personally.

The bill alleges that the complainant, immediately after the execution of the contract, went into possession of the premises, and rented a portion of them to a tenant, who continued in possession until the October following, and that he had entered into contracts, and had become bound to convey to the Racine, Junesville and Mississippi Railroad Company, and the Racine Gas Light Company, each a portion of the said premises, and that he has at all times been ready and willing to perform, on his part, the said agreement.

The bill further alleges that on the 27th day of June, 1853, Norris and wife made and executed a deed of said premises to the complainant, in pursuance of said agreement, and deposited the same in the hands of their agent at Racine, but that Slauson had not yet executed the same. That the deed purported to be executed by Norris and wife of the first part, Slauson and wife of the second part, and to the complainant of the third; that in said deed Slauson is made to covenant with the complainant that he is seized of a legal estate in said premises for the use of Nancy Norris, and are free from incumbrances created by him.

It is further alleged, that at the time of making the agreement, and at the time of executing the deed by Norris and wife, all the parties supposed and believed that Slauson held the legal title in trust for Nancy Norris; that so far as the agreement and deed relate to Slauson, all the recitals and stipulations were inserted through mistake and misapprehension; that the deed so executed has never been delivered to the complainant, but remains in the hands of Butterfield, the agent of Norris and wife.

On the first day of October, 1853, the complainant executed a

mortgage on the premises to secure the payment of two promissory notes as provided in said agreement, for five hundred dollars each, bearing interest at 12 per cent., and payable according to the terms stipulated, and on the same day tendered the notes and mortgage to Butterfield, the agent of Norris and wife, and demanded a deed of the premises, which was refused. On the 29th of September, 1853, Norris and wife executed a deed of the premises to the defendant Miller (which was recorded), and as is alleged, with full knowledge of the rights of the complainant, and to defraud him; and that on the 15th April, 1854, Miller and wife conveyed to Bell, by deed, recorded April 27th, and that this conveyance was also made to defraud the complainant. The complainant further alleges that there were incumbrances on the premises, a mortgage made by Norris and wife 11th June, 1851, for $500, at twelve per cent., payable two years from date, also two judgments which were liens, one for $46 25, and the other for $131 85, and prayed that he might be allowed to pay off said incumbrances out of the purchase money; that the deed from Norris and wife to Miller, and from Miller to Bell, be set aside as fraudulent; that the deed of Norris and wife to the complainant in the hands of Butterfield, be delivered over to him, and be declared a good and valid deed to pass the title, and for other relief.

There was no personal service upon Norris and wife, they being residents of Michigan, and were proceeded against as non-residents. There was no appearance by either of them, and the bill was taken as confessed against them.

Miller appeared and answered, denying all knowledge of the complainant's rights in the premises, and insisting that the conveyance by Norris and wife to him, and by him to Bell, were *bona fide* transactions, without any intent on his part to defraud the complainant.

Bell appeared and answered, denying all knowledge of the rights and interests of the complainant, and claiming to be a *bona fide* purchaser, without notice, for a valuable consideration. Bell further alleges, on information and belief, that the complainant had not been always ready and willing to perform the agreement on his part, and that immediately after receiving the conveyance from Miller, he went into possession and had continued

in possession ever since. He also set out in his answer certain objections to the bill, and prayed that he might have the same advantages thereof as though he had demurred. These are stated in the opinion of the court. These answers were not required to be on oath, and general replication was filed to each.

The case was brought to hearing at the October term, 1854. The allegations of the bill relating to the contract and deed, and the conveyance to Miller, and by him to Bell, and also as to the misapprehension as to the supposed interest of Slauson, the outstanding incumbrances, were all proved. It appeared that Norris had conveyed the premises to Slauson in trust for his wife, but previous to the contract with Bull he had reconveyed the premises to Norris, to enable Norris and wife to mortgage them (as they did) to one Cram as security for a loan of five hundred dollars, the same mortgage mentioned in the bill. Evidence was also given showing the knowledge of Miller and Bell of the interest of the complainant in the premises. This evidence is sufficiently detailed in the opinion of the court.

After the hearing the court below made a decree, granting the complainant the relief prayed for in his bill, declaring the conveyances of Norris and wife to Miller, and Miller and wife to Bell, fraudulent and void, and that the deed of Norris and wife to the complainant be delivered to him, and stand as a valid conveyance of the premises. That on receiving the said deed the complainant pay to the said Seth N. Norris, or his agent or attorney for him, one thousand dollars as the purchase money to be paid by the complainant.

"And it is further ordered, adjudged and decreed, that the said complainant be at liberty to pay off and satisfy a certain mortgage on said premises executed by the defendants, Seth H. Norris and Nancy Norris his wife, to one Thomas J. Cram, and also that the said complainant be at liberty to pay off and satisfy all other liens or incumbrances on said premises, of whatsoever name or nature (except a certain mortgage to the state of Wisconsin, given by the said defendants, Seth H. Norris and Nancy Norris his wife, and being the same mortgage mentioned in said deed to said complainant), and that all sums so paid by said complainant, be deducted from the said sum of one thousand dollars purchase money, so, as aforesaid, to be paid to the said

Seth H. Norris by the said complainant; and, also, that the further sum of sixty-nine dollars, heretofore paid by the said complainant and said Moses B. Butterfield, be in like manner deducted from said purchase money.

"And it is further ordered that it be referred to William E. Wording, county judge of Racine county, to ascertain and report to this court the amount of said liens, charges and incumbrances."

From this decree the defendant Bell appealed to this court.

*J. W. Carey*, for the complainant, appellee.

*E. G. Ryan & N. H. Joy*, for the defendant, appellant.

*By the Court*, COLE, J. The first question presented for our consideration in this case, is one of practice. It is insisted by the counsel for the appellant, that the Circuit Court erred in proceeding to a hearing of the case upon the merits before the demurrer had been disposed of, and section 20, chapter 84 of the Revised Statutes, is relied upon to sustain this position. That section provides that, "If the defendant file a demurrer and answer, the complainant shall not proceed on the answer till the demurrer has been argued or disposed of." It is a very familiar rule, we suppose, of chancery practice, that a defendant may demur to one part of a bill and plead and answer to other parts; and this section requires that when a party does that, the demurrer shall be heard and determined before proceeding to a hearing of the case upon the merits. But we cannot see that this provision of the statute can have any application whatever to this case. Here the appellant Bell answered fully the bill, and in the answer raising some objections to the frame of the bill, and the sufficiency of the allegations therein contained, claims the same benefit from them as though he had demurred to the bill. Now, it must be perfectly obvious that the court could only consider these objections upon the hearing of the cause. If the appellant Bell had desired to take the judgment of the court upon any part of the bill, he should have put in a demurrer extending to that part, and answered to the other parts;

Bull vs. Bell.

and then the provision of the statute above cited would have applied to this case; but now it is otherwise.

An objection is taken to the bill, that it is defective for want of proper parties.

It is insisted that Slauson was a necessary party to the suit; 1st, because he signed the contract, a specific performance of which is sought to be enforced; and 2d, that without his being before the court, the avails of what is mentioned in the bill as having been trust property, might not be disposed of as equity would require, for the use and benefit of Mrs. Norris, the *cestui que trust.* In reference to the first objection, it is answered that, at the time the contract was made and entered into, Slauson had no interest whatever in the premises to be conveyed, either equitable or legal; that he signed the same under a misapprehension, supposing the title was still in him, as it once had been, but that were it otherwise, and had he some kind of interest in the premises to be conveyed, and that the complainant might refuse to accept the deed unless executed by him with the other parties. Still, inasmuch as the complainant is willing to accept the deed made by Norris and wife, and relinquish all claim, if any he has, upon the contract against Slauson, that he ought to have the relief he prays for: in other words, that it is perfectly competent for him to accept less than he would be entitled to receive by a strict performance of the contract, while he makes full performance upon his part. This, it seems to us, he has a perfect right to do. We suppose it to be well settled that an objection at the hearing, for want of a particular party, may be obviated by the complainant's waiving the relief he is entitled to against such party, providing the rights of others are not prejudiced by it. *Paulet vs. The Bishop of London*, 2 *Atk.* 296; 1 *Barb. Ch. Prac.* 321. It appears to be a clear and incontestable proposition, that if the complainant is content with the performance of this contract by Norris and wife, waiving all right to insist upon Slauson's signing the deed, he ought to be permitted to do so. He thus elects to abide by a partial performance upon their part, although making a full performance upon his. *The Attorney-General vs. Gower*, 1 *Ves.* 218; *Waters vs. Trovis*, 9 *J. R.* 465; *Story Eq. Jurs.*, § 779.

Neither can we see that it was necessary to make Slauson a

party in order to protect the rights of Mrs. Norris. The testimony in the case shows that the property was conveyed to Slauson, by Norris, in trust for his wife, on the 12th of August, 1850. The consideration mentioned in the deed, is love and affection. It also appears that Slauson reconveyed the property to Norris on the 11th of June, 1851, and that this deed of conveyance was put upon record that day. It is hardly probable that Mrs. Norris was ignorant of this last conveyance, or that it was made without her consent. We presume she was fully cognizant of it, and we are greatly confirmed in this supposition by the circumstance that she and Norris on the same day executed the mortgage to Cram. We think it fair to presume that the property was conveyed by Slauson to Norris, at this time, with the full understanding of all parties, for the purpose of making a loan of Cram and giving the requisite security. But however this may be, whether this conveyance was made with or without the knowledge of Mrs. Norris, it is not sufficient that she who alone is interested in the proper disposition of this fund—if it be the avails of trust property—is now before the court? Had she made a separate answer to the bill, as she would, upon proper application to the court, have been permitted to do, setting up a claim to this purchase money, hostile to the claim of her husband, and shown that she was fairly entitled to it, there would be no difficulty in securing it to her sole and exclusive enjoyment. But this she has not seen fit to do. Both she and her husband have let the bill be taken as confessed, so that in whatever aspect we consider the case, we cannot see that Slauson was a necessary party to the suit.

Another objection taken to the bill is, that there is no allegation or proof that the complainant ever paid the mortgage to the state, or paid or tendered payment to Slauson the purchase money of the premises or the sureties therefor. The bill alleges, with all necessary certainty, that the notes described therein, were tendered to Norris, and this allegation is fully sustained by the proof. Indeed, under the circumstances of the case, it is very questionable whether any tender was necessary, for the twofold reason that, in the most favorable view that can be taken of this contract for the defendant Norris, it appears to be as much his duty to tender the complainant a deed executed according to

its terms, as it was that of Bull to tender the notes and mortgage; and further, by conveying the property to Miller, Norris had placed it out of his power either to perform his part of the contract or to insist upon its performance by the complainant. The complainant avers his readiness *now* to perform upon his part, and whether a proper tender was made before the bill was filed, in any event could only affect the question of costs. Furthermore, we think that if any tender was necessary, that the one made was sufficient. The notes were made payable to the order of Slauson, in strict and literal conformity to the contract, and tendered to Norris, since it had been ascertained that Slauson had no earthly interest in the matter.

The counsel for the appellant indulged in a good deal of ingenious and refined criticism in endeavoring to show that the contract set forth in the bill was too ambiguous and uncertain in its terms to be enforced. Perhaps it is not drawn with as much fullness and legal precision as it might have been, and yet there is no difficulty whatever in arriving at the meaning and intention of the parties who made it. Will any one seriously pretend that upon a fair and reasonable construction of the language of this contract, that it is unintelligible or doubtful as to what the parties meant by it? Is not the land to be conveyed described with all convenient certainty? And is there any room for doubt as to the terms upon which the sale was made? It seems that Norris and wife understood the contract in the same way that the complainant does, and proceeded to execute the deed according to its conditions. We think that the contract is sufficiently clear and explicit, that there can be no mistake about the intention of the parties who made it, and that it is equitable and just that it should be enforced against the defendants Norris and wife. It therefore remains to be considered whether it should be as against Miller and Bell, and whether they have established their defence of being innocent purchasers for valuable consideration without notice. This is the defence which they set up in their answers, which are not sworn to. And first, how does the case stand as to Miller? Can he be protected as a *bona fide* purchaser for valuable consideration without notice? We think that he cannot. The contract for the sale of the property was made on the 9th of May, 1853. It appears that the complainant

went into possession of the property some time that month, and rented the property to Hicock. He also exercised other acts of ownership over it, by building some picket-fence and removing some manure from the barn. Miller's store was about fifteen rods from the premises, and in passing to it from the house, the. nearest way was by them. Now, it is incredible to suppose that Miller could have remained in ignorance of the complainant's possession, and of these various acts of ownership exercised over the property, and under his very eyes, until he purchased on the 29th of September following. From these circumstances alone we should be warranted in concluding that he had notice of complainant's rights. But that is not all. The witness Patte testifies that he conversed several times with Miller about Bull's purchase. . From this it appears that he had full and actual no· tice of the complainant's rights, and can in no sense of the word be considered an innocent purchaser without notice.

The same observations in reference to Miller's having notice of the complainant's rights apply with almost equal force to Bell. He lived within forty or fifty rods of the premises during the summer of 1853; and his place of business was about the same distance from them. He must have known of the complainant's possession. Besides, Wetherel swears that he was present at a conversation between Bell and the complainant, when the latter asked the former what he thought about his pur· chase of this property, and Miller's coming in and taking it. And Bell replied that he considered it a shabby action. The witness might have been, and probably was mistaken as to when this conversation occurred, but he could not have been mistaken about the fact of there being such a conversation. He swears positively to it; and if it was not so, he very well knew it, and he was guilty of wilful perjury. We can discover no possible motive for him to commit such a crime. Another circumstance not to be overlooked, is the fact that the deed from Miller to Bell according to its date, was made while a former suit was pending between the complainant and Norris and Miller, for the enforcement of this contract, and placed upon record the day that suit was dismissed. We have no doubt but Miller and Bell took their respective deeds with full knowledge of the rights of

the complainant, and consequently they should be set aside as fraudulent and void as against him.

We are unable to approve in all respects of the decree rendered in the court below. Why should the complainant be exonerated from paying interest upon the purchase money according to the terms of the contract? That contract is very definite as to when the interest should commence, and the rate per cent. It would seem equitable and just that the complainant pay it as agreed upon. Moreover, we do not think it right to permit the complainant to pay to Butterfield the sixty-nine dollars out of the purchase money. Why should he do that? Butterfield acted as the agent of Norris in making the sale. Let him settle with him then for his services. The Cram mortgage should be discharged out of the purchase money, and also the judgments mentioned in the bill.

The surplus, if any there shall be after discharging these liens, should be paid over to Bell. If Norris and wife had appealed, and their interests were before us for our consideration, we might and probably should have required the complainant to either pay off the mortgage to the state, or secure Norris and wife from all personal obligation accompanying that mortgage, if any such exists. The deed left with Butterfield to be delivered to complainant, and decreed to be a valid deed to convey all the interest which Norris and wife had in the premises at the time the contract was made.

The cause will have to be remanded to the Circuit Court for the purpose of ascertaining of said liens, and for discharging them, and for a final decree according to law.